IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02704-PAB-CBS

NATHAN YBANEZ,
SIMON SUE,
SAM LINCOLN,
ATORRUS RAINER,
GREG RIVAS,
PATRICK SUCHAIYA,

          Plaintiffs,

v.

RICK RAEMISCH, in his official capacity as Executive Director of the Colorado Department of
Corrections (CDOC),
LOU ARCHULETA, in his official capacity as Director of Prisons for CDOC,
BERNADETTE SCOTT, in her official capacity as Lieutenant of the SCF Mail Room and in her
individual capacity,
SCF MAIL ROOM EMPLOYEE "DJ", in his/her individual capacity,
MICHELLE NYCZ-HALLIGAN, in her official capacity as a Major on the SCF Publication
Review Committee and in her individual capacity,
SCF MAIL ROOM EMPLOYEE "PDR", in his/her individual capacity,
IRIS CHRISTIANS, in her individual capacity,
SCF MAIL ROOM EMPLOYEE "Z SMITH", in his/her individual capacity,
UNKNOWN CDOC PUBLICATION REVIEW COMMITTEE,
UNKNOWN ADMINISTRATIVE HEAD,
RANDY OLGUIN, in his individual capacity,
PAMELA J. PLOUGHE, in her individual capacity,
WILLIAM BRUNELL, in his individual capacity,
ANGEL MEDINA, in his individual capacity,
SCF CORRECTION OFFICER OCHOA, in her individual capacity,
SCF SERGEANT ROBERT HRADECKY, in his individual capacity,
ANDRIES PRINSLOO, in his individual capacity,
JOHN CHAPELAINE, in his individual capacity,
MICHAEL MILLER, in his individual capacity,

          Defendants.

---

## REPORT AND RECOMMENDATION

---

Magistrate Judge Shaffer

This matter comes before the court on the "State Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint" (Doc. 80), filed on August 11, 2015, by Defendants Rick Raemisch, Lou Archuleta, Bernadette Scott, Michelle Nycz-Halligan, Iris Christians, Edward Smith, Randy Olguin, William Brunell, Angel Medina, Robert Hradecky, John Chapdelaine, Deon Jimenez, Claudia Ochoa, Robert Ryles, and Pamela Plough (collectively "CDOC Defendants"). Plaintiffs filed their Response (Doc. 85) on August 31, 2015. The CDOC Defendants did not file a Reply.

Also before the court is "Defendant Michael Miller's Motion to Dismiss" (Doc. 81), filed on August 17, 2015. Plaintiffs filed their Response (Doc. 86) on September 10, 2015, and Defendant Miller filed his Reply (Doc. 88) on September 24, 2015. These Motions were referred to the Magistrate Judge by Memorandum (Doc. 95) on November 12, 2015. This court has carefully considered the Motions, the related briefing, the entire case file, and applicable case law.  For the following reasons, the court recommends that the CDOC Defendants' Motion be granted in part and denied in part. The court further recommends that Defendant Miller's Motion be granted.

## FACTUAL BACKGROUND

Plaintiffs Nathan Ybanez, Simon Sue, Sam Lincoln, Atorrus Rainer, Greg Rivas, and Patrick Suchaiya, inmates who are proceeding *pro se*, bring this action pursuant to 42 U.S.C. § 1983 against various employees of the Colorado Department of Corrections ("CDOC"). They also assert a claim against Warden Michael Miller, who is employed by a privately run facility that is owned and operated by Corrections Corporation of America. (Doc. 55 at 22, ¶ 47). Plaintiffs allege numerous violations under the First and Fourteenth Amendments arising from

Defendants alleged censorship and seizure of magazines and personal mail deemed to be "sexually explicit."  All of the alleged incidents of censorship took place while Plaintiffs were housed at the Sterling Correctional Facility ("SCF").[1]

According to the allegations in the Third Amended Prisoner Complaint ("Complaint") (Doc. 55), the CDOC was previously subject to a settlement agreement that prohibited it from censoring sexually explicit materials unless it fit within the following categories:

> Materials that clearly depict or describe bestiality, pedophilia, sadism, masochism, necrophilia, discharge of bodily fluid, oral, anal or vaginal penetration by animate or inanimate objects, or oral sex.

(the "original policy") (Doc. 55 at 6-7; *see also Exhibit 1*, Doc. 55 at 35[2]). The original policy, codified as AR 300-26, also specifically provided that materials could not be rejected solely because "its content is religious, philosophical, political, social, or *sexual*, or because of its religious, philosophical, political, or social views, *its sexual content*, or because it is unpopular, repugnant, or critical of the [CDOC] or other government authority" ("content-based categories") (*Exhibit 1*, Doc. 55 at 36) (emphasis added).

However, following the expiration of the settlement agreement, the CDOC amended AR 300-26 ("June 2012 policy"). Among the many changes to the policy, the definition of "sexually explicit" material was amended to include nudity. (Doc. 55 at 7, *see also Exhibit 2*, Doc. 55 at 53). In addition, "sexual content" was specifically removed from the list of content-based categories. (*Exhibit 2*, Doc. 55 at 55). The policy was amended again in November 2012 ("November 2012 policy"). This version retained the new definition of "sexually explicit," but it also provided for certain categories of exceptions that could be permitted: "A publication may be

---

[1]  Plaintiff Sue has since been transferred to the Kit Carson Correctional Center.
[2]  As a convention, the court cites to the electronic filing page numbers, as opposed to the page numbers assigned by Plaintiffs or Defendants.

allowed which would otherwise fall within the definition of sexually explicit if [] the publication has literary, educational, scientific, artistic or historic value."[3] (*Exhibit 3*, Doc. 55 at 71). Plaintiffs allege that this list of exceptions is nominal, and that in practice, exceptions are never actually permitted. (Doc. 55 at 11, ¶ 12). The November 2012 policy also allegedly "made any sexually explicit materials which had previously been processed into the prison system [into] contraband." (Doc. 55 at 7).

Following the enactment of these amended versions of AR 300-26, Defendants allegedly withheld numerous publications and items of personal mail that did not meet the definition of "sexually explicit," or that fell within one of the exceptions. In addition, Defendants seized, and declared as contraband, a number of items that had been permitted under the original policy. Plaintiffs claim that many of these items were withheld or seized from them without any notice or any opportunity to appeal the decisions. Plaintiffs seek recovery in the form of injunctive relief and monetary damages.

## STANDARD OF REVIEW

### A.    Fed. R. Civ. P. 12(b)(1)

Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)).   Pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may dismiss a complaint for lack of subject matter jurisdiction. The determination of a court's jurisdiction over subject matter is a question of law. *Madsen v. United States ex rel. U.S. Army, Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987).   "A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the

---

[3] This exception was included in the June 2012 policy, but, apparently, only the Director of Prisons was permitted to make such exceptions. (*Exhibit 2*, Doc. 55 at 57).

proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974).

A motion to dismiss for a lack of subject matter jurisdiction may take two forms. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). It may facially attack a complaint's allegations or it may challenge the facts upon which subject matter jurisdiction depends. *Id.* at 1002-1003.

> When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1003 (internal citations omitted); *see also Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

## B.      Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). The court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, this court may consider exhibits attached to the complaint without converting the motion into one for summary judgment pursuant to Rule 56. *See Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard requires more than the sheer possibility that a defendant has acted unlawfully. *Id*. Facts that are "merely consistent" with a defendant's liability are insufficient. *Id*. "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). "Nevertheless, the standard remains a liberal one, and 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely.'" *Morgan v. Clements*, No. 12-cv-00936-REB-KMT, 2013 WL 1130624, at *1 (D. Colo. Mar. 18, 2013) (quoting *Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)).

The court is cognizant of the fact that Plaintiffs are not attorneys; consequently, their pleadings and other papers have been construed liberally and held to a less stringent standard

than formal pleadings drafted by a lawyer. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "[I]f the court can reasonably read the pleadings to state a claim on which the plaintiff[s] could prevail, it should do so despite the [plaintiffs'] failure to cite proper authority, [their] confusion of legal theories, [their] poor syntax and sentence construction, or [their] unfamiliarity with pleading requirements." *Id*. However, this court cannot act as a *pro se* litigant's advocate. *Id*.  It is the responsibility of the *pro se* plaintiffs to provide a simple and concise statement of their claims and the specific conduct that gives rise to each asserted claim. *See Willis v. MCI Telecomms.*, 3 F. Supp. 2d 673, 675 (E.D.N.C. 1998). This court may not "supply additional factual allegations to round out a [plaintiffs'] complaint." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Nor may Plaintiffs defeat a motion to dismiss by alluding to facts that have not been alleged, or by suggesting violations that have not been plead. *Associated General Contractors of California Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* plaintiffs must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## C.   Qualified Immunity

Each of the Defendants has raised the qualified immunity defense as to the claims asserted against them. Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). Qualified immunity is "immunity from suit rather than a mere defense to liability [and] it is effectively lost if a case is erroneously permitted to go to trial."

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Whether defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

In resolving a motion to dismiss based on qualified immunity, this court must consider "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. The plaintiff bears the burden of showing, with particularity, facts and law establishing the inference that the defendant violated a clearly established federal constitutional or statutory right. *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994). If the plaintiff fails to satisfy either prong, the defendant is entitled to qualified immunity. *Pearson*, 555 U.S. at 236. The court has the discretion to consider these prongs in any order it chooses. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

As to the first prong, "[i]f no constitutional right would have been violated were the allegations established," the inquiry is at an end. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong — whether the right was clearly established — must be considered "in light of the specific context of the case, not as a broad general proposition." *Id*. An official's conduct "violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing is violating that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.

## ANALYSIS

### I.      Eleventh Amendment Immunity

Defendants Raemisch, Archuleta, Scott, and Nycz-Halligan contend that the claims against them in their official capacities must be dismissed based on Eleventh Amendment immunity. (Doc. 80 at 4). The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. This amendment has been interpreted to bar citizens from suing their own states in federal court. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995). A suit against a state official in his or her official capacity is a suit against that official's office and, consequently, is no different from a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, suits against state officials in their official capacity should be treated as suits against the state. The Eleventh Amendment thus shields state officials, in their official capacities, from claims for monetary damages. *See Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007). Furthermore, a § 1983 action may only be brought against a natural person. *See* 42 U.S.C. § 1983. "Neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71.

To the extent that Plaintiffs seek monetary relief against the above named Defendants in their official capacities, their claims are, in actuality, claims against the Colorado Department of Corrections.[4] *See Will*, 491 U.S. at 71. Such claims are barred by the Eleventh Amendment and

---

[4] In their Response, Plaintiffs seem to concede this point. They state that that this argument is moot because they are not seeking damages from these Defendants in their official capacities. (Doc. 85 at 3).

should be dismissed for lack of subject matter jurisdiction. *See id*; *see also Russ v. Uppah*, 972 F.2d 300, 302-303 (10th Cir. 1992) (explaining the differences in the immunity doctrines).

However, Plaintiffs also seek injunctive relief from the CDOC Defendants. (*See* Doc. 55 at 32). "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the state.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 168 n.14 (1985)); *see also Ex parte Young*, 209 U.S. 123, 159-60 (1908). Further, claims for injunctive relief against state defendants in their official capacities are not barred by the Eleventh Amendment. *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("[T]he Eleventh Amendment does not prevent federal court from granting prospective injunctive relief to prevent a continuing violation of federal law."). Consequently, to the extent that they seek injunctive relief against Defendants Raemisch, Archuleta, Scott, and Nycz-Halligan in their official capacities, those claims survive.

## II. Personal Participation

In his Motion (Doc. 81), Defendant Miller argues that Plaintiffs have failed to establish that he personally participated in any alleged violation of their constitutional rights. (Doc. 81 at 4). It is well established that personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To maintain a section 1983 action, the plaintiff must allege facts showing that the defendant was "personally involved in the decisions leading to [the plaintiff's] mistreatment." *Escobar v. Reid*, 668 F.Supp.2d 1260, 1290 (D.Colo. 2009). A plaintiff must establish an affirmative link between the alleged constitutional violation and each defendant's participation, control, or direction. *Serna v. Colo. Dept. of Corr.*, 455 F.3d 1146, 1152-53 (10th Cir. 2006). "Because vicarious liability is inapplicable . . . to § 1983 suits, a plaintiff must plead that each Government-official defendant,

though the official's own individual actions, has violated the Constitution." *Ashcroft*, 556 U.S. at 676.

According to the allegations in the Complaint, Defendant Miller — while working at some other "unknown CDOC correctional facility" — censored issues of *Lowrider* magazine and *Skin & Ink* magazine from that facility.[5] (Doc. 55 at 20-22, ¶¶ 37, 46). As a result of Defendant Miller's decisions, Plaintiff Rainer's issues of *Lowrider* magazine, and Plaintiff Lincoln's issue of *Skin & Ink* magazine, were censored by SCF staff.[6] *Id.* There are no allegations that Defendant Miller personally participated in the censorship of Plaintiff Rainer's or Plaintiff Lincoln's magazines. Nor are there any allegations that Defendant Miller had any authority or intent to cause the censorship of materials at SCF. Rather, according to the Complaint, Defendant Miller's alleged actions only affected Plaintiffs Rainer and Lincoln as a result of CDOC policy, which allegedly requires conformity amongst the facilities.[7] (Doc. 55 at 19, ¶ 31).

The court concludes that this connection is too attenuated to support liability under § 1983. To conclude otherwise could conceivably impose liability upon *any* prison official who ever made a censorship decision — at any point in time — no matter how far removed he or she is from the prison or the specific incident in question. At some point, one's involvement simply becomes too tenuous to support liability. Consequently, the court recommends that Defendant

---

[5]   Defendant Miller is the Warden of the Crowley County Correctional Facility ("CCCF"), a privately run facility owned and operated by Corrections Corporation of America. (Doc. 81-1 at 2-3). According to their own allegations, none of the Plaintiffs were housed at CCCF during the events in this case. (*See generally* Doc. 55).

[6]   Plaintiffs make similar allegations against Defendant Medina (alleged Warden of Limon Correctional Facility), Defendant Brunell (alleged Associate Warden of Buena Vista Correctional Facility), Defendant Olguin (alleged Publication Review Committee Chair at Canyon Minimum Centers), Defendant Plough (alleged Administrative Head of Canyon Minimum Centers), an "Unknown CDOC Publication Review Committee", and an "Unknown Administrative Head." (*See* Doc. 55 at 19-22, ¶¶ 31-46). Plaintiffs contend that as a result of these Defendants' decisions at their own facilities, Plaintiffs' mail was censored at SCF.

[7]   It is not entirely clear that conformity is automatically mandated. Indeed, the Administrative Regulation recognizes that facilities may not agree on whether certain publications should be censored, and it provides for an appeal process in the event of disagreement. (*See Exhibit 3*, Doc. 55 at 72).

Miller's Motion to Dismiss (Doc. 81) be granted, and that he be dismissed from this case. Further, because this reasoning applies with equal applicability to the other non-SCF Defendants, the court also recommends that the Complaint be dismissed as against Defendants Medina, Brunell, Olguin, and Plough. And for the same reasons, the "Unknown CDOC Publication Review Committee" and the "Unknown Administrative Head" should also be dismissed.

## III.    Prison Litigation Reform Act

The CDOC Defendants argue that Plaintiffs' claims for compensatory damages must be dismissed because Plaintiffs have failed to allege any physical injury. (Doc. 80 at 12-13). The Prison Litigation Reform Act states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). "The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (applying section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).

Here, Plaintiffs do not allege any physical injuries resulting from any of the Defendants' alleged actions. Instead, it appears that their request for damages is related only to the mental and emotional distress of being denied access to the withheld mail and publications. (*See* Doc. 55 at 32). Thus, Plaintiffs' request for compensatory damages for mental and emotion injury is barred by the PLRA.

However, section 1997e(e) does not bar recovery for nominal or punitive damages. *Searles*, 251 F.3d at 879. Consequently, to the extent Plaintiffs seek to recover nominal or punitive damages, unrelated to mental or emotional harm, a prior showing of physical injury is not necessary and those claims may proceed. *See id*.

IV.     **Statute of Limitations**

The Tenth Circuit has "made clear that the statute of limitations for § 1983 actions brought in Colorado is two years from the time the cause of action accrued." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006). "A Section 1983 action 'accrues when facts that would support a cause of action are or should be apparent.'" *Id.* (quoting *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995)).

The CDOC Defendants contend that Plaintiffs' cause of action is barred in its entirety because the CDOC amended the definition of "sexually explicit" to include nudity in June 2012. (Doc. 80 at 5). However, it is not clear from the allegations in the Complaint that all of the Plaintiffs were or should have been aware of this amendment. There is no indication in the Complaint that this policy amendment was communicated to the general inmate population. Further, according to the allegations in the Complaint, only three Plaintiffs — Plaintiffs Sue, Rivas, and Ybanez — were denied mail on the basis of the June 2012 policy. (Doc. 55 at 12, 14, 16-17, 19). The remaining Plaintiffs were apparently not denied mail until after the November 2012 policy was enacted. In addition, the Plaintiffs challenge more than just redefinition of "sexually explicit." The November 2012 policy allegedly included different censorship procedures (Doc. 55 at 7), all of which the Plaintiffs challenge as facially unconstitutional. Therefore, the court cannot conclude that Plaintiffs' "facial" claim is barred by the statute of limitations.

Furthermore, as the court understands the Complaint, Plaintiffs also assert a number of "as-applied" constitutional challenges. Plaintiffs contend that the withheld materials were not "sexually explicit," as defined by the amended regulation, or, alternatively, were subject to an exception. They further contend that each instance of censorship constituted a separate violation

of their First Amendment and/or due process rights. Thus, the date that the regulation was amended to include nudity has no bearing on these "as-applied" challenges. Nevertheless, with regard to these "as-applied" challenges, the court concludes that those censorship decisions that occurred prior to October 2, 2012[8], are barred by the statute of limitations. Plaintiffs became aware of the facts supporting these causes of action more than two years prior to filing the original complaint. Accordingly, the court recommends that Plaintiff Sue's "as-applied" challenges regarding his June 2012 *Penthouse* magazine (Doc. 55 at 12, 17); August 2012 *Penthouse* magazine (*Id*. at 17); October 2012 *Penthouse* magazine (*Id*.); and November 2012 *Penthouse* magazine (*Id*.) be dismissed as barred by the statute of limitations. The court similarly recommends that Plaintiff Rivas' "as-applied" challenges regarding his July/August 2012 and October 2012 issues of *Playboy* magazine (*Id*. at 14, 19) be dismissed.[9]

## V.     First Amendment Claims

The CDOC Defendants contend that Plaintiffs' censorship claims fail as a matter of law because Plaintiffs have no right to receive sexually-explicit materials, and that AR 300-26 is facially constitutional. (Doc. 80 at 5-6, 8-12).

It is well settled that inmates have a First Amendment right to receive information while in prison to the extent that right is not inconsistent with prisoner status or the legitimate penological objectives of the prison. *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004) (citing *Pell v. Procunier*, 417 U.S. 817 (1974)). The Supreme Court has held that a prison regulation that impinges on an inmate's First Amendment rights is valid only if it is "reasonably related to legitimate penological interests." *Searles v. Dechant*, 393 F.3d 1126, 1131 (10th Cir. 2004) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). This reasonableness standard requires

---

[8]  The original complaint was filed on October 2, 2014. (Doc. 1).
[9]  Although Plaintiff Ybanez was allegedly denied reading materials based on the June 2012 policy, his claims fall within the statute of limitations. (Doc. 55 at 18-19).

the court to "balance the guarantees of the Constitution with the legitimate concerns of prison administrators." *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002).

In *Turner v. Safley*, the Supreme Court articulated four factors that should be considered in determining the constitutionality of a prison's restrictions on speech: (1) whether a valid and rational connection exists between the regulation and the government interest it protects; (2) whether the inmates have alternative means for exercising the constitutional right; (3) the impact accommodating the right will have on guards, other inmates, and the allocation of prison resources; and (4) whether alternatives readily exist that would accommodate the prisoner's rights. 482 U.S. at 89-91. This analysis requires the court, "on a *case-by-case basis*, to look closely at the *facts of a particular case and the specific regulations and interests of the prison system* in determining whether prisoners' constitutional rights may be curtailed." *Beerheide*, 286 F.3d at 1186 (emphasis added).

According to the Complaint, Plaintiffs not only disagree with how the regulation was applied to them specifically, but they also argue that the regulation is unconstitutional on its face. The CDOC Defendants ask this court to conclude as a matter of law that the *Turner* factors are satisfied and that the regulation is valid. At this stage of the proceedings, however, there is no factual record upon which this court could make such findings. Therefore, this argument is misplaced. Indeed, many of the cases cited by the CDOC Defendants support this court's conclusion. In those cases, the courts upheld similar prison regulations banning nudity, but they did so at the summary judgment stage on the basis of a factual record. *See Sperry v. Werholtz*, 413 F. App'x 31 (10th Cir. 2011) (affirming summary judgment in favor of defendants where Secretary of the Kansas Department of Corrections' affidavit testimony established that the amended regulation was reasonably related to legitimate penological interests); *Mauro v. Arpaio*,

188 F.3d 1054 (9th Cir. 1999) (affirming summary judgment wherein the district court had a factual record upon which to evaluate the *Turner* factors). While the *Turner* factors were satisfied in those instances, the court will not simply assume that the same type of facts exist here. *See generally Ramirez v. Pugh*, 379 F.3d 122 (3d Cir. 2004) (reversing the district courts' ruling dismissing a challenge to federal law prohibiting the use of funds to distribute or make available material that is sexually explicit or features nudity; finding that the district court did not have an adequate factual basis for its findings and remanding "with instructions to conduct an appropriate proceeding before reevaluating the amendment and regulation under *Turner*"). Furthermore, according to this court's research, no Colorado court has yet to consider whether this particular amended regulation meets the requirements of *Turner*.[10] Thus, the CDOC Defendants' argument is unavailing and the Plaintiffs' facial challenge is not properly dismissed at this time.

Turning to Plaintiffs' claims that the regulation is unconstitutional as applied to them individually, the court also concludes that it cannot conduct this analysis based on a non-existent factual record. The CDOC Defendants do not discuss the *Turner* factors with regard to Plaintiffs' individual censorship claims. And absent an appropriate factual record, the court must focus on the allegations in the Complaint, accepting them as true and viewing all reasonable inferences from those facts in Plaintiffs' favor.

In their Complaint, Plaintiffs allege that the censored materials did not contain any "sexually explicit" content as defined by the regulation, or — if they did meet the definition — the materials fell within one of the permissible categories of exceptions. Accepting this as true,

---

[10]   A previous version of AR 300-26 has been examined and upheld as facially constitutional. *See Frazier v. Ortiz*, No. 07-cv-02131-CMA-KMT, 2010 WL 924254 (D. Colo. Mar. 10. 2010); *see also Ind v. Wright*, 52 F. App'x 434 (10th Cir. 2011) (utilizing *Turner* factors and standard in *Thornburgh v. Abbott*, 490 U.S. 401 (1989), found AR 300-26 to be facially valid in the context of denial of religious material). However, the November 2012 version is undeniably broader in scope than the original.

the court must infer that the censored magazines and personal mail did not contain prohibited content. Furthermore, drawing all reasonable inferences from these allegations in Plaintiffs' favor, the court must also infer that the CDOC Defendants have withheld and are continuing to withhold these materials when doing so is not reasonably related to legitimate penological interests. *See Ramirez*, 379 F.3d at 128. Consequently, the court finds that Plaintiffs have pleaded enough to survive a motion to dismiss the First Amendment "as-applied" claims.

Having found that the allegations in Plaintiffs' Complaint set forth a constitutional violation, the court must consider whether the right alleged is clearly established such that a reasonable official would have understood that withholding the publications violated Plaintiffs' constitutional rights. Again, without a factual record, the court infers that the censored publications and personal mail do not contain any prohibited content; therefore, withholding the materials is not reasonably related to a legitimate penological interest. The law is clearly established — such that a reasonable official would know — that this kind of censorship would violate an inmate's constitutional rights. Accordingly, the CDOC Defendants have not shown that they are entitled to qualified immunity at this juncture.

In making these foregoing recommendations, the court is cognizant of the fact that the withholding of incoming and outgoing mail — under similar prison regulations banning sexually explicit and nude materials — has generally been upheld as constitutional. *See Sperry*, 413 F. App'x at 39-42 (Kansas regulation excluding material containing nudity was reasonably related to legitimate penological interests); *Mauro*, 188 F.3d at 1063 (prison rule excluding all material containing frontal nudity was reasonably related to legitimate penological interests); *Amatel v. Reno*, 156 F.3d 192 (D.C. Cir.1998) (statute prohibiting the Federal Bureau of Prisons from using federal funds to distribute or make available materials known to be sexually explicit or

featuring nudity); *Owen v. Wille,* 117 F.3d 1235 (11th Cir. 1997) (same, where inmate was not

allowed to receive nude photographs); *but see Aiello v. Litscher*, 104 F.Supp.2d 1068 (W.D. Wis.

2000) (concluding that the defendants had had failed to establish that a similar policy restricting

sexually explicit material and material containing nudity was not an impermissible violation of

prisoners' First Amendment rights). Therefore, Defendants may ultimately be able to show that

they are entitled to qualified immunity on this claim. At this procedural juncture, however, the

court may not examine whether the CDOC Defendants' conduct complied with applicable

regulations. The court must assume, as Plaintiffs have alleged, that these officials unreasonably

applied the regulation to content that is not prohibited. Defendants may renew their claim of

qualified immunity at a later juncture involving a more complete factual record, which would

enable the court to examine the circumstances surrounding the decisions to withhold the specific

publications and items of personal mail.

## VI.   Due Process Claims

In Claim 2, Plaintiff Lincoln contends that Defendant Scott violated his due process

rights by failing to comply with the prison's policy regarding the composition of the Publications

Review Committee. (Doc. 55 at 13). Specifically, he contends that the policy requires a number

of different individuals to sit on the committee. Despite this, Defendant Scott was allegedly the

only committee member in attendance when Plaintiff Lincoln's magazine was censored. (*Id.*)

However, a failure to adhere to administrative regulations does not equate to a constitutional

violation. *Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional

violations doe no lose their qualified immunity because their conduct violates some statutory or

administrative provision."); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A]

failure to adhere to administrative regulations does not equate to a constitutional violation."). Thus, this claim against Defendant Scott should be dismissed.

Similarly, in Claim 4 Plaintiffs Lincoln and Rainer makes a number of allegations regarding Defendant Nycz-Halligan's alleged violations of their due process rights. (Doc. 55 at 16, ¶ 14). They specifically allege that Defendant Nycz-Halligan censored a number of publications and pieces of personal mail without "meet[ing] or confer[ing] with the other members of the SCF Publication Review Committee as required by the Policy." (*Id*. at 16-17, ¶¶ 14, 18). As with Plaintiff Lincoln's claim against Defendant Scott, this particular allegation only alleges a violation of an administrative provision and, consequently, does not state claim for a violation of due process rights. *Hovater*, 1 F.3d at 1068 n.4. Thus, to the extent Plaintiffs Lincon and Rainer wishes to assert a separate due process claim based upon this conduct, the claim against Defendant Nycz-Halligan should also be dismissed.

However, in addition to the above allegation, Plaintiff Lincoln also alleges that Defendant Nycz-Halligan censored his publications and mail without affording him any notice and without allowing him an opportunity to appeal the decision. (Doc. 55 at 16, ¶ 14). In addition, in Claim 3 (*Id*. at 14, ¶ 6), Claim 6 (*Id*. at 19, ¶ 28), Claim 9 (*Id*. at 22, ¶¶ 47-49), and Claim 10 (Id. at 23, ¶ 51),[11] Plaintiffs contend that various other CDOC Defendants censored incoming mail — or materials that were previously approved — without affording Plaintiffs notice or an opportunity to be heard. In *Procunier*, the Supreme Court recognized that both inmates and correspondents

---

[11] The court recognizes that in several of these claims, Plaintiffs allege that they were not given notice or an opportunity to appeal "as set forth in the . . . Policy." (Doc. 55 at 19, ¶ 28). Although these claims are couched as violations of an administrative regulation, it is clear that the crux of Plaintiffs' claims is a denial of the minimal procedural safeguards of notice and opportunity to appeal. The court liberally construes these allegations as stating a procedural due process claim as opposed to a violation of an administrative regulation. *Bellmon*, 935 F.2d at 1110 ("[I]f the court can reasonably read the pleadings to state a claim on which the plaintiff[s] could prevail, it should do so despite the [plaintiffs'] . . . confusion of legal theories . . . .").

have a qualified liberty interest in uncensored communications that are protected by the First Amendment. 416 U.S. at 418 (affirming a district court requirement "that an inmate be notified of the rejection of a letter written by or addressed to him, that the author of the letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disapproved the correspondence."). Thus, inmates have a right to procedural due process when publications are rejected. *Jacklovich*, 392 F.3d at 433.

Again, without a factual record, the court must accept as true the Plaintiffs' allegations that the publications and items of personal mail were withheld without any notice that the facility was censoring those materials. The court also accepts as true the allegations that Plaintiffs were not given any opportunity to appeal those decisions. Thus, Plaintiffs' Complaint has stated a procedural due process violation with respect to these items. In addition, the law on this matter is clearly established, *Procunier*, 416 U.S. at 396, and consequently a reasonable officer should have known that the failure to provide Plaintiffs with minimal procedural safeguards would violate Plaintiffs' constitutional rights. Therefore, the CDOC Defendants are not entitled to qualified immunity with respect to these claims.

## CONCLUSION

For the foregoing reasons, the court RECOMMENDS that the CDOC Defendants' Motion to Dismiss (Doc. 80) be GRANTED IN PART and DENIED IN PART.

It is FURTHER RECOMMENDED that Defendant Miller's Motion to Dismiss (Doc. 81) be GRANTED.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. Once Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the district court of the magistrate judge's proposed findings and recommendations and will result in waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve the issue for *de novo* review by the district court or appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 25th day of February, 2016.

BY THE COURT:

s/Craig B. Shaffer_____
United States Magistrate Judge